Honorable Chet Brooks Chairman Health and Human Services Committee Texas State Senate P.O. Box 12068 Austin, Texas 78711
Honorable Bob McFarland Chairman Criminal Justice Committee Texas State Senate P.O. Box 12068 Austin, Texas 78711
Re: Duty to cover care and treatment received for chemical dependency provided in chemical dependency treatment centers as defined in article 3.51-9, section 2A, of the Texas Insurance Code (RQ-2083)
Dear Senators Brooks and McFarland:
 You each ask the same two questions concerning the application of article 3.51-9 of the Texas Insurance Code. We are advised that these questions relate primarily to group health insurers subject to chapter 3 of the Texas Insurance Code. See Ins. Code arts. 3.50 to 3.51-13.
 You ask first whether section 2A of article 3.51-9 prohibits the denial of coverage for treatment received for chemical dependency in a chemical dependency treatment center rather than in a general hospital licensed by the Texas Department of Health.[1]
You also ask whether an insurance company that issues group health insurance policies or contracts can define or interpret the term "hospital" in those policies or contracts to mean only a general hospital licensed by the Texas Department of Health and use that definition or interpretation to deny coverage for chemical dependency treatment provided in a chemical dependency treatment center.
Based on the legislative history as well as the current wording of article 3.51-9, we conclude that group health insurers issuing policies or contracts within the scope of article 3.51-9 cannot deny coverage for chemical dependency treatment provided in a chemical dependency treatment center as defined in section 2A because such treatment was not provided in a hospital licensed by the Texas Department of Health. We also conclude that such a denial of coverage is prohibited even if the insurer defines or interprets the term "hospital" in its group health insurance policies or contracts to mean only a general hospital licensed by the Texas Department of Health.
As originally enacted in 1981, article 3.51-9 stated that certain providers of group health insurance or other health coverage in this state "shall offer and make available" to their insureds "benefits for the necessary care and treatment of alcohol and other drug dependency that are not less favorable than for physical illness generally." Acts 1981, 67th Leg., 1st C.S., ch. 7, § 1, at 63. The 1981 act also required that "benefits so provided shall be determined as if necessary care and treatment in an alcohol or other drug dependency treatment center were care and treatment in a hospital." Id. at 64.
In Attorney General Opinion JM-5 (1983), we held that the 1981 act required a provider of a group health insurance policy or contract within the scope of the act to offer and make available to their insureds benefits for alcohol and other drug dependency subject to their rejection. In addition, we construed the language of the 1981 act stating that benefits provided for treatment in an authorized alcohol or other drug dependency treatment center constituted "care and treatment in a hospital" to mean that insurers within the scope of the act could not discriminate against authorized alcohol and other drug dependency centers and thus could not deny coverage for treatment provided by such centers on the basis that they were not hospitals. Furthermore, relying on section 3 of article 3.51-6 of the code, which states that chapter 3 insurers may not require services to be rendered by a particular provider, we also held that chapter 3 insurers must provide coverage for drug dependency treatment provided in any authorized center.
Subsequent to our opinion, the legislature in 1985 passed Senate Bill 601 and thereby amended article 3.51-9. Acts 1985, 69th Leg., ch. 632, § 12, at 2338. Section 12 of Senate Bill 601 made the following two major changes to article 3.51-9:
 (1) restricted article 3.51-9 to the care and treatment of alcohol dependency by deleting all references to care and treatment for other drug dependency; and
(2) required coverage of the care and treatment of alcohol dependency by stating that insurers and other health care providers within the scope of the act `shall provide' benefits for the care and treatment of alcohol dependency and not just `offer and make available' such coverage subject to rejection by the insured.
See id.; see also Bill Analysis, C.S.S.B. 601, 69th Leg. (1985) (bill mandates coverage for alcohol dependency by amending existing language to require the provision of such benefits).[2]
In 1989 the legislature passed Senate Bill 911 during the regular session and thereby expanded the application of article 3.51-9 to the care and treatment of chemical dependencies other than alcohol. Acts 1989, 71st Leg., ch. 1097, § 1, at 4510. Section 2A, as amended by Senate Bill 911, mandates that insurers,[3]
certain nonprofit hospital and medical service plan corporations, and health maintenance organizations providing group health coverage as well as various self-funded or self-insured health insurance plans or arrangements
 shall provide, under such group insurance policies or contracts and such plans or arrangements providing hospital and medical coverage or services on an expense incurred, service, or prepaid basis, benefits for the necessary care and treatment of chemical dependency that are not less favorable than for physical illness generally, subject to the same durational limits, dollar limits, deductibles, and coinsurance factors. (Emphasis added.)
In accordance with section 2A, "benefits so provided shall be determined as if necessary care and treatment in a chemical dependency treatment center were care and treatment in a hospital."
The legislative history available with regard to Senate Bill 911 and the House's companion bill, House Bill 954, establishes that the legislature intended to require providers within the scope of article 3.51-9 to provide coverage for chemical dependency treatment similar to the coverage required in 1985 for treatment of alcohol dependency. See Bill Analysis, S.B. 911, 71st Leg. (1989) (expands 1985 mandate "to include mandatory coverage of `chemical' dependencies"); House Research Organization's Daily Floor Report, Part Two, at 43 (May 4, 1989) (House Bill 954 amends article 3.51-9 to require coverage for the treatment of alcohol and other chemical dependencies).[4]
As mentioned above, the current language of section 2A of article 3.51-9 states that providers within the scope of the article "shall provide . . . benefits for the necessary care and treatment of chemical dependency that are not less favorable than for physical illness generally" and that "benefits so provided shall be determined as if necessary care and treatment in a chemical dependency treatment center were care and treatment in a hospital." This statutory language clearly indicates the legislature's intent to mandate provision of chemical dependency benefits and also prohibit chapter 3 group insurers from denying coverage for treatment provided in a chemical dependency treatment center on the basis that such a center is not a general hospital licensed by the Texas Department of Health. See Attorney General Opinion JM-5, at 3 (construing almost identical language and reaching similar conclusion).
The legislative history of article 3.51-9 reinforces this conclusion. As summarized above, the legislature first changed article 3.51-9 from a provision that merely mandated providers within the scope of the article to offer coverage for certain drug dependency treatment even if the treatment was provided in alcohol and other drug dependency treatment centers to a provision in 1985 that mandated actual coverage of alcohol dependency treatment even if provided in authorized treatment centers. Second, the legislature in 1989 expanded the coverage mandated in 1985 for alcohol dependency treatment to include the care and treatment of chemical dependencies other than alcohol. At no point does the legislative history indicate any legislative intent to allow a chapter 3 group insurer to discriminate against chemical dependency treatment centers because they are not hospitals, or in particular, not hospitals licensed by the Texas Department of Health. In fact, while amending other language in article 3.51-9 in 1985 and 1989, the legislature left unchanged the statutory language referring to treatment in a dependency center as if it were care and treatment in a hospital. As mentioned in our earlier discussion of Attorney General OpinionJM-5, this language supports the conclusions therein that the legislature did not intend insurers within the scope of article 3.51-9 to be free to discriminate against authorized drug dependency treatment centers, and thus, that such insurers could not deny coverage for treatment provided in such centers on the basis that they were not hospitals.
In addition, section 2A of article 3.51-9 requires authorized treatment centers to be affiliated with certain hospitals or satisfy certain accreditation or licensing standards. See supra, note 1 at 1. Licensing by the Texas Department of Health is not one of those standards. While the legislature amended section 2A in 1989 to include provision for detailed regulatory standards for chemical dependency treatment, its amendatory language neither authorized the regulatory addition of a standard requiring authorized centers to be hospitals licensed by the Texas Department of Health nor the imposition of such a limiting standard by chapter 3 group insurers in their group policies or contracts. Acts 1989, 71st Leg., ch. 1097, § 1, at 4511 (State Board of Insurance and Texas Commission on Alcohol and Drug Abuse shall adopt standards on benefit costs, treatment periods, and review procedures).
A brief filed in response to your request addresses the application of article 3.51-9 to chapter 3 insurers as well as certain other health care providers. As a result, you have asked that we address generally the application of the article to other major group health care providers. We provide the following discussion to assist you in applying article 3.51-9.
As mentioned above, article 3.51-9 applies to nonprofit hospital and medical service plan corporations providing group health coverage that are subject to chapter 20 of the Insurance Code. As stated in Attorney General Opinion JM-5, although those corporations are statutorily authorized to contract with specific providers, they still must treat authorized treatment centers like hospitals under their contracts unless those contracts are expressly excluded from article 3.51-9. Attorney General OpinionJM-5 at 4-5 (citing Ins. Code arts. 20.01, 20.11, 20.12); see supra, note 2 at 4 for statutory exclusions. Neither the 1989 amendments to article 3.51-9 nor the subsequent amendments to articles 20.11 and 20.12 lead us to change this conclusion. See Acts 1989, 71st Leg., ch. 7, § 1, at 276.
Attorney General Opinion JM-5 reached a similar conclusion with regard to health maintenance organizations providing group health coverage subject to article 3.51-9. Id. at 5. As noted in that opinion, health maintenance organizations are governed primarily by chapter 20A of the Insurance Code. Id. Our conclusion with regard to those organizations relied in particular on article 20A.06(a)(3). The current wording of that article is substantially the same today and still authorizes health maintenance organizations to arrange for required services through health care entities that contract with them. Article 20A.14(g), which was added in 1987, also states that no type of health care provider licensed or otherwise authorized to practice in this state may be denied the opportunity to participate in the provision of health care services to such an organization solely on the basis of type of license or authorization held by the provider if the organization is providing services within the provider's license or authorization. Given these two articles, we affirm our conclusion in Attorney General Opinion JM-5 that health maintenance organizations subject to article 3.51-9 may provide treatment required by that article solely through entities with whom they contract provided that authorized treatment centers are treated the same as hospitals. Furthermore, we add that those organizations may not discriminate against chemical dependency treatment centers in violation of article 20A.14(g). See also Ins. Code arts. 20A.02(r), 20A.09(f) added and amended, respectively, by Acts 1985, 69th Leg., ch. 906, §§ 1, 5, at 3033, 3035 (article 3.51-9 applies to health maintenance organizations other than those offering only coverage of specific single illnesses or injuries).[5]
In answer to your second question, article 3.51-9 prohibits group insurers from denying coverage for treatment received in an authorized center under policies or contracts subject to that article based on the definition or interpretation of the term "hospitals" in such policies or contracts to mean only a general hospital licensed by the Texas Department of Health. Contractual terms or conditions cannot frustrate insurance benefits that statutes guarantee, and any contractual attempt to void or narrow required coverage is ineffective. American Liberty Ins. Co. v. Ranzau, 481 S.W.2d 793, 796-7 (Tex. 1972); McCalla v. State Farm Mut. Auto. Ins. Co., 704 S.W.2d 518, 519 (Tex.App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.); Hamaker v. American States Ins. Co. of Texas, 493 S.W.2d 893, 895 (Tex.Civ.App.-Houston [1st Dist.] 1973, writ ref'd n.r.e.).
To summarize, article 3.51-9 mandates the provision of chemical dependency benefits in group policies and contracts subject to that article. It also prohibits chapter 3 group insurers issuing policies or contracts subject to article 3.51-9 from denying coverage for treatment received in a chemical dependency treatment center rather than in a general hospital licensed by the Texas Department of Health. Furthermore, article 3.51-9 prohibits such a denial of coverage even if the insurer defines or interprets the term "hospital" in those group policies or contracts to mean only certain hospitals such as those licensed by the Texas Department of Health.
 SUMMARY
Article 3.51-9 of the Texas Insurance Code mandates the provision of chemical dependency benefits in group policies and contracts subject to that article. Article 3.51-9 applies to group insurers subject to chapter 3 of the code and prohibits those insurers who issue policies or contracts subject to article 3.51-9 from denying coverage for treatment received in a chemical dependency treatment center rather than in a general hospital licensed by the Texas Department of Health. Furthermore, article 3.51-9 prohibits such a denial of coverage even if the insurer defines or interprets the term "hospital" in group policies or contracts subject to the article to mean only certain hospitals such as those licensed by the Texas Department of Health.
Very truly yours,
 Jim Mattox Attorney General of Texas
 Mary Keller First Assistant Attorney General
 Lou McCreary Executive Assistant Attorney General
 Judge Zollie Steakley Special Assistant Attorney General
 Renea Hicks Special Assistant Attorney General
 Rick Gilpin Chairman, Opinion Committee
 Prepared by Celeste A. Baker Assistant Attorney General
[1] For purposes of article 3.51-9, the phrase "chemical dependency" includes psychological or physical dependence on or addiction to alcohol or a controlled substance. Ins. Code art.3.51-9, § 2(1). Section 2A defines a "chemical dependency treatment center" as a facility that provides a program for the treatment of chemical dependency according to a written plan approved and monitored by a physician. The facility providing chemical dependency treatment must also be either:
 (1) affiliated with a hospital under a contractual agreement with an established system for patient referral;
 (2) accredited as a chemical dependency treatment facility by the Joint Commission on Accreditation of Hospitals;
 (3) licensed as a chemical dependency treatment program by the Texas Commission on Alcohol and Drug Abuse; or
 (4) licensed, certified, or approved as a chemical dependency treatment program or center by another state agency having legal authority to so license, certify, or approve.
See Ins. Code art. 3.51-9, § 2A.
[2] Section 12 also amended article 3.51-9 to expressly exclude certain types of policies. Excluded in 1985 were various self-funded or self-insured plans or arrangements with 250 or less members, individual insurance and health maintenance organization policies, and health insurance policies only providing cash indemnity for confinement benefits, supplemental or limited benefit coverage, or coverage for specified diseases or accidents, or disability income coverage. See also Acts 1985, 69th Leg., ch. 805, § 1, at 2848 (also amending article 3.51-9 to affect changes indicated in text and this footnote). The current wording of article 3.51-9 excludes the same small, individual, or limited benefits policies. Ins. Code art. 3.51-9, § 2A.
[3] Section 1 of article 3.51-9 states that one of the purposes of the statute is to provide consumers with benefits for the treatment of chemical dependency in group health insurance policies or contracts. That section also provides that such benefits are to be provided consumers of group health coverage provided by health maintenance organizations and certain self-funded or self-insured plans.
[4] To facilitate the transition to expanded coverage, section 2 of Senate Bill 911 delayed the effective date of the 1989 amendments to January 1, 1990. In particular, section 2 provided that the amendments applied only to policies, contracts, or other arrangements within the scope of the article that were "delivered or issued for delivery or renewed in this state on or after January 1, 1990, or subject to collective bargaining agreements . . . entered into or renegotiated on or after January 1, 1990." Acts 1989, 71st Leg., ch. 1097, § 2, at 4512; see also id. § 3(b) (for certain exceptions regarding current litigation).
[5] Since we have not in the past addressed the relationship of article 3.51-9 and the federal laws governing self-funded and self-insured health care plans such as the federal Employee Retirement Income Security Act of 1974, we decline to address that relationship in this opinion given the focus of your questions. See generally FMC Corp. v. Holliday, 59 USLW 4009 (U.S. Nov. 27, 1990) (No. 89-1048); Metropolitan Life Ins. Co. v. Massachusettes, 471 U.S. 724 (1985) (concluding state law not preempted by ERISA with regard to insured plans, but not deciding issue with regard to plans that self-fund or self-insure against risks).